Landmann v. Landmann, No. 5, H.P. 2037. Counselor Ritten. Yes, Your Honor. Make your seat. May I be supported? Yes, Your Honor. Thank you. I represent Katlyn Landmann, and he's the father of three children who, two months after judgment was entered, granted him equal parenting time. And after he had spent a period of time basically doing all the primary parenting, such as transporting children to doctor's appointments and activities, and making sure they were where they were supposed to be, he had an order of protection filed against him on an ex parte basis. There's a Latin phrase that's quisquidoet ipsos custodis, which means, and I guess it's loose translation is, who watches the watchers. And we're here today because you were watching the watcher of that trial, and the watcher of that trial was Judge Summer. And we believe he made some mistakes in the way that was conducted in his rulings, and that's why we are bringing it to your attention. He entered a plenary order of protection that lasted for a year, which prohibited my client from seeing his children. The basis upon which he did it we think was erroneous. Number one, the act which prompted this was my client had allegedly spanked one child, which he admitted. But he said, I spanked her three times. I did it not in anger, but because she failed to do homework as I instructed her. She kept wanting me to give her any answers. Thereafter, when she went home, she allegedly told the mother what had happened. And the mother at that time was on the record was having problems with her residence. She was trying to negotiate a car for my client's father. The oldest child was going to stay with my client's father and him. There was a failure of financial agreement at the time. So what happens is we have this hearing, and at the hearing the allegations are brought up, and my client defends himself in saying this is the reasonable exercise of discipline of a child, which is an exception to the rule or definition of abuse by the statute. The statute provides, and this is at 750-60-103, abuse means physical abuse, harassment, intimidation of a dependent, interference with a person of liberty, or willful deprivation, but does not include reasonable direction of a minor child by a parent or a person in loco parentis. And there are cases that describe what this could be, and it even suggests that the use of an instrument like a spoon or a belt, which even leaves marks, could still be consistent. This may not necessarily be perfect parenting or timely parenting, but it's something that's allowed for parents to do. My client's, yes. The court finds bruises were left, whether it's three strides or 47. Well, it's unclear because... Yeah, what I said. 47. Oh, 47. I'm sorry. Almost 100, I think. You had a cold. Yeah. I don't know what the court found. The court merely found a checkmark, and this is one of the things we have. It's sort of an industry of how these things are processed, and these forms are a checkmark. It's a mere checkmark. So the court really never addressed the defense of the reasonable exercise. And, in fact, that's the other reason we have an objection, because there were no pictures provided. Wasn't there an allegation that there were photos taken? Yes. According to the mother, photos were taken when she took the child to the hospital and then she said the police took pictures of it, and that was a week to 10 days before we had the hearing. And one of the things I asked for was an inference, an adverse inference, because the mother had exclusive control over the children. She could have brought the child in to testify. She didn't bring the child in to testify. She could have brought pictures in. She didn't bring pictures in. In fact, there's no testimony that came in about the bruising, because what happened is she wanted to introduce testimony from the child, but didn't follow the statute on it. The statute on it, on an out-of-court statement by a child, is specifically governed by 735 ILCS 5-8-2601A. And it requires really a two-part process, and that is first you have to say is this an act that depicts some form of abuse. And the second part is if the court, it can be admissible if a statement is made to another person. However, you have to find at a separate hearing whether there's the time, the content, circumstance of the statement provide sufficient safeguards of reliability. This is the balancing part. And, so you have to do that first. And either the child either testifies or is unavailable as a witness, and there is corroborative evidence of the act which is the subject. We have neither in this case. First of all, the child was available. There's nothing to suggest the child wasn't available. And there was no corroborative evidence. This is one where if you looked at the admissible evidence, we had my client testify to spank this child three times because she didn't do her homework. The other things that were allowed in over objection were suggestions by the mother that I took the child when she said this, I took her to the hospital. Object hearsay, mother says, the reason I did it was to show what the mother's next act was, which is not introducing it for the truth of the matter asserted, but as an exception to the hearsay rule. So there actually is no evidence in there showing whether there was actual bruising. Certainly if there was proof of it, the mother was the exclusive control of that information. My client could not go near the child because she got an ex parte order. But the court in its order indicated that he did judge the credibility of the people before him. Are you saying that the child was a necessary witness which precluded the court's ability to judge the credibility and make an order in this case? No, I'm not saying that. I'm saying that the credibility is separate from that. The rules of evidence are not mere suggestions. They're rules, and you've got to follow them. And if you want to introduce evidence and have it considered as evidence, separate from the credibility. The mother could have said, yeah, I really believed when my daughter said she was hit 27 times. I really believed her. That's not evidence of her getting hit 27 times. It may be evidence of the mother's belief. But we're talking about proof, and this balancing act... But, for example, if the mother was being vicious in that statement, and there was proof, I think that's maybe what you're saying, is that there was proof that it wasn't 27 times, or somehow there was proof that she was being vindictive, then that would affect her credibility. Her credibility, I think, is always subject to attack. I mean, the court can only look at credibility when they're listening to the witnesses, right? Well, I think they have to look at the evidence, too. And I'm thinking that if it doesn't come in as evidence, then they can't consider it. Not to affect the credibility? I mean, if someone makes a statement that's outrageous or vindictive, even though it's not evidence, you don't think that affects their credibility? I think that everything that comes in can affect the credibility of the witness, and the court should consider that. But I think that's a separate issue from whether there's evidence of something. The mother was, there was... You mean evidence of whether or not she was spanked 27 times? 27 times, and there was no evidence, none, to suggest he did it in anger, which is an indicator of abuse. Well, let's suppose that the child was spanked 27 times. Doesn't it still require a finding of reasonableness? Correct. Was that made in this case? Dr. Eichhorn, I think there was a box that was checked. I'm sorry? There was a box that was checked. There was no separate findings, because the way these forms are set up, it doesn't allow for that. So we don't know. And there wasn't a transcript that was made of it, right? There was a transcript, yes. No, I mean, the court's ruling on reasonableness. There was a transcript made. I don't recall whether or not there, I believe there wasn't anything specifically said about the reasonableness. But isn't that one of the factors that has to be determined? I mean, isn't that part of your argument, or am I wrong about that? It is part of my argument. No, not at all, Your Honor. What's going on is that there are things that were considered as evidence which were not evidence to be considered. Okay, but as a separate issue now, I'm talking about reasonableness under the statute. Correct. I'm looking at the statute now that you're complaining about was not followed. Correct. There's also a reasonableness box, and I use the box figuratively, not specifically. What, if anything, and I'm going to ask both sides this question, what, if anything, did the court do to determine reasonableness, assuming that the spanking occurred? Assuming against my argument or the only argument I could say. Assuming against your argument. It doesn't matter. They check a box. Right. It's checking a box without saying specifically that I've addressed the issue that you've raised as an exception to the abuse definition is that this is the reasonable direction of a child by a parent. So, you know, this is a common thing in our courts where we're using these forms, and now, I mean, the whole access to justice thing is to use the forms, which I think is going to come before this court repeatedly. But what do we do with that box that was checked? Now I'm using it specifically. The box, it was checked. It was checked, and I think that it's still subject to that analysis, and that's where I talk about who watches the watchers. It's convenient, and it becomes an industry. What I've seen, and I'm on the ground floor, I'm in the trenches on these cases, I see an overwhelming groundswell of orders of protection being used, some for valid reasons, to protect people, but also as a strategic tool to get an advantage, and that's why so many are dismissed the first time we come in, and you don't see that because it doesn't make it that far. But you see an overwhelming amount. People get what they want momentarily, and they move on because I actually had the opportunity to testify in the beginning when they were creating the statute of order of protection. That was 40 years ago, and they talked about what the problems were at the time because all we could do was either injunctive relief or a peace bond kind of remedy, and they wanted something that would go further than that. What has happened, though, in the pendulum swing of it is that we have now a strategic tool in which the court is sort of the gatekeeper of how far we allow people to go, and in this case, where there was evidence of it, and the mother had other motives, and if the court checked the box found in her credible, I can't tell what that really means. I can't tell what it really means when they check a box when we make a specific argument with the only testimony, and there is no evidence. There's no medical evidence provided. There's no medical reports provided. There's no testimony that's admissible, and we have testimony accepted by the court. So does it even matter if the mother did believe the child was spanked 27 times if there's no cooperating evidence? Right. It doesn't matter. The mother couldn't believe it 100 times. It doesn't matter because it isn't what the mother believes. It's what the evidence shows, and the evidence, the only evidence in the record, is that the father said, yes, I did. I was disciplining my daughter, and he goes on to say, I believe that you cannot allow other people to do your work for you. I come from a different generation, and I believe that when it's, you can't sit back and you have to work hard to get things that you're supposed to get. So, yeah, I did spank him, period. And that's, he doesn't deny it, he doesn't shy away from it, but the product of this is that he has an order that says he can't see his kids, any of his kids, for a year, for a year. That expires this month? December 20th, Your Honor. But still, that's, there's supposed to be a balancing effect. Do you think the issue will be moved? No. Because the fact that an order of protection is entered carries long-lasting results. And in a custody case or other hearings, the fact of whether there's an existence of domestic violence is a factor to be considered. What about the failure of your client to get the photos that allegedly exist? Couldn't your client have subpoenaed or, with a request for production, gotten the photos? In a perfect world where I had nothing else to do and he knew about it in time? But if I'm hired at the last minute, or if I'm hired with, he's only 14 days to go. I understand, but. The medical reports would be in a different state. I can't ask for a continuance because my client is the one who's the prisoner of an order that never should have been entered, and the person who is the proponent of it would be the one I would expect. If there's such ugly bruising, then why not take a picture yourself? Why not bring the child? All these things are things that could have been done that were never done. No, but you asked the court to apply the adverse inference rule of the law. And the very first item is that the evidence was under the control of the party and could have been produced through due diligence. If the photos were taken by the hospital, that's not something that's under the control of the mom, let's say. It's the hospital that has the photos. So how can we invoke the adverse witness rule? The mother could have taken pictures right there with him. Well, could have, would have, should have. She had control of the child, which my client didn't. Yeah, but this is control of the evidence now. We're talking evidence. You want to talk evidence, so let's talk photos. How do we apply the adverse inference rule on photos if the hospital was in control? All she had to do was ask for them. Yeah, but all she had to do was ask for them. No, because I'm barred from, my client was barred from. . . Could not have subpoenaed the photos from the hospital. Let me go back to another slide. Okay, I'm sorry. We didn't know at that time that those, we found out that those pictures were taken at the time. We didn't know when the child was taken. We had no idea at the time because, again, this is a speedy procedure. Is this during the hearing? We found it during the hearing. That the photos were taken. Correct. Okay, but still the photos were not under the control of the mom. They were under the control of the hospital. Whether they should have done it, that could be just lack of evidence. That's another thing that there's no evidence, right? Correct. Between the two of us, though, she's the one that asked us. We didn't. She had knowledge. Correct. Please look forward, Mr. Farrington. My name is. . . You have to speak up now. My name is Susan Simone. I'm a member of Lincoln Legal Assistance, and I represent Rachel Landman. I would like to discuss adverse inference rules since that is fresh in your mind. In the petition on page C8, Ms. Landman wrote that she took the child to the hospital. The hospital and the police took photographs. So as soon as Mr. Landman got service of the petition, he was notified that there were pictures outstanding not just with the hospital but also with the police department. So saying he wouldn't find out until trial. It says both the hospital and the police took pictures. That is what is written in the petition. It's in the motion. Yes. Leaving aside the adverse inference rule, what evidence was there that the court had to consider? The mom saw the redness and the bruising. The daughter came home crying. She asked, why are you crying? She said, Dad spanked me. And she saw the redness and the bruising, and that prompted her to take action with taking the child to the hospital. I'm sorry, were you just going to ask? No, I'm done. Okay. So following up on Justice Chapman's question, the issue of how many times the child was spanked is, in your mind, not relevant? It is not. Because the mother saw something. It is not relevant because spanking a child three times, that Dad admits, the amount of physical force that would be necessary to leave bruising on the child's buttocks is extraordinary. Well, did the mother talk about bruising? Yes. In the record on appeal, in the report of the proceedings, she discusses that the child was crying, why you're crying, and she said that there was redness and bruising that got worse. And that was a corroborating evidence to the child's statements as well. So now that was never shown to the court, but that was told to the court by the mother, and we get back to this credibility issue. Right, which is within the discretion of the court to hear both Mom and Dad testify as to what happened, whether or not what the result of the spanking was, and for the court to weigh that credibility and the demeanor of the witnesses and make a determination. So now we have redness and bruising that got worse that's in the transcript, right? Yes. And you ask, you mean the mom asks the court to find that there was physical abuse. Yes. The court, however, can make an exception to that finding of physical abuse, or there is an exception, if you're following me, to physical abuse when it comes to corporal punishment by a parent. But in order to do that, the court has to determine reasonableness of what was done, right? Or wrong? Parents are allowed to use corporal punishment against their children if the corporal punishment is reasonable. Okay, that's a great way to say it. Because most of the cases are, well, a number of the cases are in the DCFS abuse in neglect context, and the courts have struggled with what is reasonable and when does reasonable corporal punishment become physical abuse. And one of the factors that a court will consider is whether there's injury to a child, and leaving a bruise and redness on the buttocks is injury to a child. So it was within the court's discretion. The court found enough evidence to find that it was not reasonable corporal punishment but was, in fact, a reckless use of physical force against a child. Okay. You described that really well, and I want to follow up with a question. The court found that there was reckless, what? You just said it. The Domestic Violence Act defines abuse in 103.14i includes the knowing or reckless use of physical force. So you just said that the court found there was reckless use of force. But where did the court make that finding? Well, the court doesn't make that specific finding verbally. We have a written order. Okay, but where in the order does he make that finding? C48, Paragraph 7, the court checks off the findings of what was found. Venue is proper. Second one is respondent has abused petitioner or the children identified earlier. And then the third one, an abused person is unable to bring his petition on their own. So those are the written findings of the court. But there's no findings regarding, you know, the mother's testimony revealed that the child had redness and bruising that got worse or even just redness and bruising or the amount of redness and bruising described by the mother was, you know what I'm saying? There's nothing like that. There's no specific findings of why the judge believed the mother over the father, other than the statement is I weigh the credibility, I weigh the evidence, and I'm issuing the order of protection. So under best versus best, are you familiar with that? Yes, I am. So why under best versus best, the holding in best versus best, is that what you just described the court did with the boxes? Why is that sufficient? Because it meets the minimum standards required of findings under the Domestic Violence Act. So you don't believe the court has to go through what I just described about the redness and bruising? You believe that doing what the form does is enough? I believe that the form is enough. The form has gone through a vetting process with the Access to Justice Commission. It has been reviewed by ‑‑ I understand. I heard what you said about this process. I know. It's concerning to me personally. Well, it's been put up for public comment and continues to be available for public comment. But it's ‑‑ the court ‑‑ the Access to Justice Commission has said that the forms approved under this umbrella shall be used by the courts or cannot be rejected by the courts. So the court can't say I'm not going to use that order if it's presented. It's only ‑‑ So, you know, and I don't want to get too deep in policy here, but so the form that has been proposed is a form that's going to be used by courts universally from what you're telling me? For the most part, I believe they are universally used in Illinois. Okay. Interesting. Under best versus best, it's only if the court's finding that an overprotection should issue, that based on the court weighing of the credibility of the evidence and the demeanor of the witnesses, only if it is clearly against the manifest way of the evidence should this be overturned or reversed. And the judge had enough evidence before him to make the decision he made. Whether you would have made a different decision, whether you would have weighed it differently isn't the issue. It's what the judge had in front of him at that time. The injury, Mr. Ferencamp said that the spanking was because the child wasn't doing her homework, but it wasn't because she wasn't doing her homework. It was because she wasn't getting her homework. And that's another consideration that the court weighs in determining reasonableness of focal punishment. She didn't understand her homework. She's a specialist. How do we know that? How do we know? Yes. He said she didn't get her homework. She said she wasn't applying herself. Who put forth that evidence? The dad. That she wasn't applying herself. He was trying to teach her how to divide 100 by 2. She wasn't trying hard enough. And the mom put forth the evidence that she was a special ed student. That was his reason for spanking her. And then he put her in court. So he got right to the focal punishment. And the court could find that unreasonable in this situation. Not just the brutality of it, but even bruises. Well, he spanked her 3 times or 27 times. That's a lot of spanking. DCFS, was there a notice to DCFS on this? There was. Mom testified that DCFS was involved. That was objected to at the hearing as well. And sustained? I believe sustained, yes. So the court did know. And let me ask you this. Do you think the fact that this was a special ed student affects the reasonableness determination by the court? I think that it certainly can. We don't know in this case. We don't know, but also the courts have to look. When they're determining reasonableness in any context, but certainly in whether or not a spanking is reckless use of force, whether all of the circumstances of the spanking, of the physical violence, of the domestic violence against a child. You know, you keep using reckless use of force, and the father really looks to a different provision of the statute, doesn't he? Why do we have this difference? Well, under 103 of the Domestic Violence Act, it's a definition of terms. Right. So one is what is abuse? And it includes physical abuse, harassment, intimidation, but it doesn't include reasonable direction of the child. But further on in the definition in sections 14.1, physical abuse includes the knowing and reckless use of physical force, knowing all reckless use. Okay. So we, your argument is that the court made the finding under 14-1 that there was no reckless use of force. Yes. That the spanking amounted to physical abuse. That there was reckless use of force. That's correct. They said that incorrectly. That's correct. That it wasn't reasonable direction of the child, but in fact, physical abuse, which is defined as reckless use of force. Under 14-1. Yes. And they continue to argue section 1. I'm sorry? They continue to argue section 1, abuse. They don't go to physical abuse. Correct. Why do you think that is? And why do you think the Act made a distinction? Because under the Domestic Violence Act, it's more than physical abuse that can amount to domestic violence. They talk about harassment. So texting someone 70 times a day. Right. Okay. Verbal, I would imagine. Verbal as well. Yes. Verbal as well.  Correct. Okay, I got it. Because harassment is also further defined as intimidation of the parent. Thank you. The other issues don't take away from the central matter that the appellant admitted to spanking his child at least three times, but she wasn't because they're not trying hard enough, that the mom saw the child crying in physical pain and that the mom saw the bruising and redness from the spanking. But with regard to the hearsay issue, mom observed the child crying because she was in pain and observed the bruising. The child's statement as to why she was crying, because she was spanked 27 times, was a statement of her physical condition or made to obtain medical treatment, both of which are exceptions under the Elmer Rules of Evidence 8033 and 8034. 2601 is in addition to 803. It doesn't take the place of 803. It doesn't supersede 803. 803 is still part of the Elmer Rules of Evidence. But 2601 allows a child's statement that doesn't come within an exception to still be heard if there's corroborating evidence. And in this case, though, there was corroborating evidence because mom saw the bruising and the redness. Even if the judge was in error in not sustaining the objection to the hearsay, it was harmless because the judge still had enough evidence on the central inquiry of did abuse occur to find that an order of protection should issue. Thank you. There's no evidence that the three slots or the three spanks caused the bruising. There's none. No nexus between it. Nothing. Assuming that we're allowed to get the evidence in the bruising, there's got to be a causal relationship. And to say merely the fact that there are bruises on a child's behind which have never been shown to the court, pictures have never been shown to know anywhere where they might be, is not sufficient to bridge that gap to say there's a causal relationship. Was your client admitted to spanking this child? Yes, he did. So why can't the court believe the mother that she saw redness? Did your client, for example, say, well, there was no redness? The court can choose to believe the mother on her observation. There's nothing that I can say to disagree with that, but that's not enough. That redness could have been caused by diaper rash, sitting too long, or not diaper rash, but sitting too long. You know what I understand, but let's take what your client has said. Yes. Spanked her three times. We know she's a special ed student, and she wasn't trying hard enough. We're not accepting that she was a special ed student. He worked with her. The mother was not involved in the school. Did she have an IEP? Was she a special ed student or not? I don't know, but my client and I can see she was special ed. He had to work with her, but she was, I think, 10 years old at the time, and he worked with her, and he sat down with her. The mother wasn't involved in the school. The mother wasn't. The father was the one who had done all the transporting. The mother didn't have a way to get the child to school or activities. This is something which the father was doing, all the doctor's appointments, activities. So the mother, to say those things, there's a question about whether or not she knew. I can't tell her. She went to her parents, and neither knows that their child was special ed. Unfortunately, I deal with a broad spectrum of clients, and that is an expression. Your client doesn't know if his child is special ed, but he transports her? I didn't say that he didn't know. I'm saying I don't know. Okay. I thought you said he was contesting the fact. Well, he disagreed with what she said, but I don't know what he knows in that way. And special needs carries different meanings than merely an IEP. My son had an IEP, and I never considered him special needs, but that may be someone else's definition. The problem is when we reduce this to a checkbox and we're making it more of a ministerial function, we forget the evidentiary function. We forget the other functions of balancing what we're supposed to consider as evidence, and that's what this was. This was checking a box, no evidence of a causal connection between the spanking. The evidence shouldn't have come in on a hearsay because there was no exception provided. The court did not set aside or have a hearing to determine whether or not there was some time, content, and circumstances of a statement to provide safeguards of reliability, which is, again, it's not a suggestion. It has to happen. And the child was available to testify. There's no evidence the child was not available. When we defer these things to just a checkbox, sometimes we forget to analyze it. I think in this case, there were things that the court considered in order to make that check, but it doesn't add up in terms of an order that should have denied my client contact for a year. Coming up to Senate 23. I know this is kind of a left-field question, but it did arise during the other argument, and I brought it up. What about these forms? What are we supposed to do with these forms? When the best versus best case is the best. We should not be prisoners to the forms. Part of it is ongoing training. We're going through a lot of conversion now and partner abuse intervention and domestic violence court now where I'm concerned that we lose the thoughtfulness of this and we become processing clerks, and all we do is check. I think there needs to be special findings found. I think the forms are not enough. Maybe a section for lines. Correct. Just something that would say, I'm not a prisoner to this box because it's mind-numbing. These forms are mind-numbing, and everybody has help along the way to do it, but they become a creature on their own. And all of a sudden, a court or a lawyer, we are prisoners to the box they put there in order to proceed because presumably it's accepted, but that doesn't mean it provides for all those things that should be considered. Like the reasonable direction of a child by a parent, which should be considered because we're not invading that part of law. People may disagree, but right now it is still the law, and they're still permitted to use corporate punishment, and that should not be the basis for an order of protection if it's gone too far. Mr. Karen Kapsch, I have kind of a maybe off-base question, but before the plenary order was entered, what occurred, if anything, prior to that? Was there an emergency order? There was an emergency order entered without notice. My client was served, and I can't tell you today when he came to see me, but usually it's 14 to 21 days in between, and so I'm not sure when he came. I get him in as soon as I can, but there's not a lot of time to gather your witnesses in that because it's a very short window, and you usually do not strategically want to continue it because my client is under restriction when he would have been basically an equal parent up until mid-time. Okay. Thank you very much. Thank you. Thank you, counsel, for your audience and support. We want to thank Mr. Manning, advisement, rigorous decision, due course.